UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQ NORTHEAST, INC.,

        Plaintiff,

v.                                                       Case No. 07-C-27

FIRST AMERICAN ENGINEERED
SOLUTIONS, LLC, and GERALD
MORRIS,

        Defendants.

## DECISION AND ORDER

Plaintiff EQ Northeast, Inc. is a Massachusetts provider of environmental cleanup and transportation services. Defendant First American Engineered Solutions, LLC ("First American") is a minority-owned contractor (defendant Gerald Morris is the owner) that assists in procuring and administering environmental service contracts. As relevant here, First American – partly due to its minority-owned status – secured and administered environmental contracts from the Army Corps of Engineers (the "Corps") and EQ Northeast performed the actual work on those contracts.

In 2006, a financial dispute arose between EQ Northeast and First American, the result of which was a case filed in this court (Case No. 06-C-220) by EQ Northeast. The lawsuit was soon settled and the action dismissed. Pursuant to the settlement agreement, First American signed a promissory note payable to EQ Northeast in the amount of some $672,000. The parties also created an escrow account into which payments they earned for certain contracts were to be deposited. (Compl., Ex. 1.) The settlement agreement and escrow account allowed EQ Northeast to earmark

a portion of the amounts First American earned to be used to pay down the principal First American owed on the promissory note. The result of this arrangement was that, by the note's due date of December 26, 2006, the principal owed by First American had been reduced to $509,039.

Two issues have given rise to the present lawsuit. Most obvious is the fact that First American has not paid the promissory note, which is now some seven months overdue. Second, First American is holding onto a payment deposited directly into its account (rather than the escrow account) by the Environmental Protection Agency. EQ Northeast alleges that this payment resulted from work done on a project covered by the settlement agreement and that it should therefore have been deposited into the escrow account. EQ Northeast has moved for summary judgment on both of these claims, *see* Fed. R. Civ. P. 56, and its motion will be granted.

**1. Promissory Note**

First American does not deny that it is in default under the promissory note. Instead, it requests extra time to conduct discovery in order to determine whether EQ Northeast's calculations of what it is owed are correct. It asserts that a variety of past accounting irregularities and violations of "privity of contract" have prevented it from ascertaining the exact amount it owes EQ Northeast.

First American's innuendo and vague protests of wrongdoing and past irregularities seemingly have nothing to do with the issue at hand, which involves principal and interest on a straightforward promissory note.[1] Its assertions certainly do not create a genuine issue of material fact. Although it asks for more time to conduct discovery, First American has failed to file an affidavit stating any reason why it is unable to set forth facts justifying its opposition to EQ

---

[1] Moreover, even if these claims were credited, they were the subject of a release that was made part of the settlement agreement.

2

Northeast's motion at this point. *See* Fed. R. Civ. P. 56(f). Nowhere does First American actually argue that EQ Northeast's calculations are incorrect; instead, First American seems content to cloud the waters with what might constitute a sort of counterclaim (had it not been the subject of an earlier release).

It appears from the record that there is no basis to conclude that further discovery is necessary or appropriate. As EQ Northeast notes, its calculations are quite simple and are based on fixed percentages set forth in the settlement agreement; there is thus no reason to conclude that First American owes any less than the amount EQ Northeast now claims. Accordingly, I conclude that EQ Northeast is entitled to summary judgment on its promissory note claim.

**2. EPA Payment**

EQ Northeast's second claim involves a particular payment that appears to have been mistakenly deposited in First American's account. On December 21, 2006, the Army Corps of Engineers, through the EPA, deposited $107,662 into a First American account at the Wells Fargo bank. EQ Northeast believed the amount reflected work it had done under a Corps contract, and in fact it confirmed as much by making a Freedom of Information Act request to the Corps' Office of Counsel. (Vine Decl., ¶ 11.) As such, the payment should have been made into the escrow account rather than First American's own account. When contacted, First American initially refused to deposit the funds into the escrow account because it could not confirm that the money was actually paid under a Corps contract covered by the settlement agreement. It has now apparently abandoned this position. (In fact, it offers absolutely no reason why it would be entitled to keep the

3

$107,000.)[2] Instead, it argues that the settlement agreement does not require the funds to be deposited into the escrow account because the funds were paid by the EPA, not the Army Corps of Engineers.

First American's argument smacks of desperation. The section of the settlement agreement creating the escrow account provides that "any and all payments received by any party on or after January 15, 2006 *from any source*, including Shaw, Jacobs or the Corps, with respect to the Shaw Subcontracts, the Jacobs Subcontract, and the Corps Contract (the "Future Payments") shall be deposited into the escrow account . . ." (Compl., Ex. 1 at 5) (italics added). Because the agreement requires deposit into the escrow account based on the *contract*, rather than the source, it does not matter that the funds might have come from the EPA rather than the Corps itself. First American does not attempt to claim that the payment was not made for the Corps Contract, and so it remains baffling why it would assert a right to keep the funds. Accordingly, First American's protest that any EPA funds were somehow excluded from the scope of the settlement agreement fails.

First American also objects to funding the escrow account on the basis that EQ Northeast has failed to tender certain certificates of disposal that may have caused First American to be delinquent under its agreements with various government agencies. Putting aside the confusing and unsupported nature of this argument, the fact remains that the settlement agreement states that "any and all payments . . . from any source" must be deposited into the escrow account if they are payments "with respect to . . . the Corps Contract." In other words, it does not condition the obligation on any disposal certificates or any other documents. Because First American does not

---

[2] The $107,000 was previously the subject of a motion for a preliminary injunction. I granted EQ Northeast's motion on January 12, 2007.

make any attempt to argue that the payment in question was not a Corps Contract payment, it is clear that the settlement agreement requires it to fund the escrow account.

**3. Conclusion**

For the reasons given above, EQ Northeast's motion for summary judgment is **GRANTED**. First American is ordered to fund the Escrow Account with the $107,662.59 it received for the Corps "Future Payment," as defined in the settlement agreement. First American is also found liable on the promissory note in the amount of $565,158.60 as of March 9, 2007, plus interest at the daily rate of $256.05, as well as costs and reasonable attorney's fees (as provided in the note). EQ Northeast shall submit an updated accounting of the amounts owed, including costs and fees, within seven days of the date of this order, after which time judgment will be entered accordingly.

**SO ORDERED** this  18th  day of July, 2007.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge